**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION**

| | | |
|---|---|---|
| **KIMBERLY MENDOZA YNIQUEZ, et al.,** | § § § | |
| *Plaintiffs,* | § § | |
| **v.** | § § § | **PE:25-CV-00023-DC-DF** |
| **REEVES COUNTY, TEXAS,** | § § | |
| *Defendant.* | § § | |

<u>**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**</u>

BEFORE THE COURT is Defendant Reeves County, Texas's ("Reeves County") Motion to Dismiss. (Doc. 10). This matter is before the undersigned Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Reeves County's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 10).

**BACKGROUND**

This case stems from the death of Pedro Mendoza Jr. ("Mendoza") while in Reeves County's custody. (Doc. 1 at 3). Mendoza suffered from advanced symptoms related to drug withdrawal during his detainment in Reeves County jail. *Id.* According to Plaintiffs—who bring this action as parties with interests in Mendoza's estate— Mendoza ultimately died because of Reeves County's various unofficial policies. *Id.* at 6.

Mendoza was detained in Reeves County jail for several days. *Id.* During his detainment, Mendoza suffered from pneumonia and experienced symptoms such as body chills, minimal appetite, and profuse sweating. *Id.* Jail personnel allegedly

observed these symptoms but failed to check Mendoza's vitals or provide him with medical care. *Id.* Plaintiffs also claim jail officials received multiple warnings from both Mendoza and his sister that he was in extreme distress and needed immediate medical attention. *Id.* at 9–10, 12. Although jail staff eventually alerted emergency medical services, it was already too late. *Id.* at 13. When medical personnel entered the jail, they found Mendoza lying on the floor of his cell and quickly observed that he had advanced pneumonia. *Id.* at 16. Mendoza was transported to the hospital but died shortly thereafter. *Id.* at 13–14.

Plaintiffs filed this action against Reeves County on May 28, 2025, bringing claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment and Texas state-law.[1] (Doc. 1). Reeves County moved to Dismiss on August 15. (Doc. 10). Plaintiffs filed their Response and Reeves County filed its Reply on September 11 and September 19, respectively. (Docs. 12, 13). Accordingly, this matter is ripe for adjudication.

### LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

1. The Court will not discuss Plaintiffs' state-law claims, as Defendant does not argue any basis for their dismissal in its Motion. (Doc. 10). "Courts have consistently held that inadequate briefing results in a waiver of a party's argument." *Heritagemark, LLC v. Unum Ins. Co. of Am.*, No. 22-CV-04513, 2024 WL 1078301, at *10 (S.D. Tex. Feb. 8, 2024) (citation omitted).

2

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if a complaint offers merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 572 U.S. 1087 (2014) (quoting *Ashcroft*, 556 U.S. at 678). When reviewing a 12(b)(6) motion, the court accepts all facts as true and construes them in the light most favorable to plaintiff. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).

"In the context of municipal liability . . . it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 532 (W.D. Tex. 2017) (quoting *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011)). "Thus, while stating a claim against a municipality requires more than a barebones recitation of the elements of municipal liability, plaintiffs need not 'specifically state what the [municipal] policy is' and can rely on 'minimal factual allegations' at this stage in the litigation." *Id.* (alteration in original) (quoting *Thomas*, 800 F. Supp. 2d at 842–43).

## DISCUSSION

Plaintiffs bring a conditions of confinement claim against Reeves County for violations of the Fourteenth Amendment with an episodic acts or omissions claim in the alternative. (Doc. 1 at 5). When a plaintiff brings a "claim under alternative theories of episodic acts and omissions or unconstitutional conditions of confinement, courts determine which theory applies based on the assessment of the facts alleged." *Cope v.*

*Coleman County*, No. 23-10414, 2024 WL 3177781, at \*8 (5th Cir. June 26, 2024) (unpublished) (citations omitted); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). "[T]here is no rule barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately." *Estate of Henson v. Wichita County*, 795 F.3d 456, 464 (5th Cir. 2015) (citing *Shepherd v. Dallas County*, 591 F.3d 445, 452 n.1 (5th Cir. 2009)). The Court will first determine which theory—or theories— apply before analyzing whether Plaintiffs state a claim.

## I.    Characterizing Claims Against Reeves County

"Municipalities can be held liable for violating a person's constitutional rights under § 1983." *Estate of Bonilla by and through Bonilla v. Orange County*, 982 F.3d 298, 308 (5th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "For pretrial detainees, such rights include the right to medical care. . . ." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (citations omitted) ("*Sanchez II*"). "This circuit characterizes such § 1983 violations of a pretrial detainee's rights as either episodic-acts-or-omissions claims or conditions-of-confinement claims." *Id.* (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc)).

"For both [conditions of confinement and episodic act or omission claims], a plaintiff has two burdens: to show (1) that a constitutional violation occurred and (2) that a municipal policy [or custom] was the moving force behind the violation." *Sanchez II*, 956 F.3d at 791 (citing *Monell*, 436 U.S. at 694). But the analysis for whether the plaintiff meets these burdens is distinct. For one, an "unconstitutional conditions theory rests on the idea that the County has imposed what amounts to punishment in advance

4

of trial on pretrial detainees, and it requires no showing of specific intent on the part of the county. The episodic acts and omissions theory, in contrast, requires a finding that particular jailers acted or failed to act with deliberate indifference to the detainee's needs." *Sanchez v. Young County*, 866 F.3d 274, 279 (5th Cir. 2017) ("*Sanchez I*") (internal quotations omitted). It is thus an important question which standard—or both—applies.

To the extent a plaintiff challenges "general conditions, practices, rules, or restrictions of pretrial confinement" they bring a conditions of confinement claim. *Sanchez II*, 956 F.3d at 791 (quoting *Hare*, 74 F.3d at 644). Conversely, "where the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case. . . ." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). For episodic claims, "an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that caused the act or omission." *Id.*

Landmines rest within these general principles.[2] Claims involving failures to train—regardless of whether they are alleged to have a systemic effect on the treatment of detainees—must be treated as episodic acts or omission claims. *Sanchez II*, 956 F.3d at 792 (citations omitted) ("Failure-to-train claims are not conditions-of-confinement claims" and instead should be analyzed as "episodic-act-or-omissions claim[s]."); *Cope*, 2024 WL 3177781, at *8 n.12 (citation omitted) ("[O]ur court has held that failure-to-train

---

2. If there is one thing the Court can agree with from Reeves County's Motion to Dismiss, it is that "confusion generated by the Fifth Circuit on this subject exasperates District Courts who are charged with evaluating these claims." (Doc. 10 at 18); *Cope*, 2024 WL 3177781, at *12 (J. Smith, dissenting) (finding the current standard for distinguishing between these two claims "inscrutably vague").

claims are episodic."). In *Flores v. County of Hardeman*, for example, the plaintiffs attempted to plead both an "episodic" claim (based on the government actor's acts and omissions) and a conditions claim (based on training and staffing policies that prompted the acts or omissions). 124 F.3d 736, 738 (5th Cir. 1997). Even so, the Fifth Circuit found the claim at issue was exclusively "an 'episodic act or omission' case" because it involved policies alleged to have resulted in failures to train staff. *Id.*

Claims involving policies that result in jails being understaffed—like Plaintiffs' claim here—have gone both ways. (Doc. 1 at 26). In *Scott v. Moore*, the Fifth Circuit analyzed a claim brought under a conditions of confinement theory involving a policy that resulted in "inadequate staffing . . . by having only one individual on duty. . . ." 114 F.4th at 54. This understaffing was alleged to have led to the plaintiff being sexually assaulted by the only staff member on duty. *Id.* The Fifth Circuit characterized the claim as episodic because "the actual harm of which she complains is the sexual assaults committed by [a government actor] during the one eight-hour shift. . . ." *Id.*

Just the opposite, the Fifth Circuit in *Cope* characterized a challenge to a county policy of "staffing only one jailer on nights and weekends" as a conditions of confinement claim. 2024 WL 3177781, at *9. This time, the Fifth Circuit found that "the alleged cause of the harm is the broader conditions, practices, rules, or restrictions" despite the harm involving a "single detainee" who had committed suicide in part due to the jail's understaffing policy. *Id.* (citations and internal quotations omitted). Any notion that *Scott*'s holding was predicated on the plaintiff challenging a single municipal policy—rather than the combination of policies or conditions challenged in

6

*Cope*—is rendered moot by *Flores*, which involved challenges to both training and staffing policies but was nevertheless analyzed as an episodic claim. 124 F.3d at 738 (finding "it is clear" that a claim "based on training and staffing policies" was an episodic claim).

Additionally, despite both claims requiring Plaintiffs to show "that a municipal policy [or custom] was the moving force behind the violation" it is unclear whether the pleading standard for establishing a municipal policy or custom differs between the two theories. *Sanchez II*, 956 F.3d at 791. For conditions of confinement claims, it is clear courts "may . . . consider how individual policies or practices interact with one another in the larger system" and pointing to a specific policy or practice is not necessarily required. *Id.* at 795 (quoting *M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 254 (5th Cir. 2018)); *Stukenberg*, 907 F.3d at 254 ("This is because confinement conditions may be constitutionally adequate if, when viewed in combination, they have a mutually enforcing effect that produced the deprivation of a single, identifiable human need."). It is unclear whether the same is true for episodic claims.

Here, like in *Sanchez II*, Plaintiffs "argue that the County has numerous de facto policies that deny medical care" to detainees. 956 F.3d at 792. The Court finds "these policies are best framed as covering three categories"—failure to provide emergency medical care, monitor detainees, and train employees. *Id.*; (Doc. 1 at 26–27). The Court considers these first two categories as involving challenges to conditions of confinement. Like in *Shepherd v. Dallas County*, Plaintiffs' alleged de facto policies of failing to provide emergency medical services and monitor detainees in medical distress

do "not implicate the acts or omissions of individuals but the jail's system of providing medical care. . . ." 591 F.3d at 453 (construing pleadings as bringing conditions of confinement claim where "no single individual's error actually caused [the plaintiff's]" injury).

Policies involving failures to train, however, must be analyzed under an episodic acts or omissions theory. *Cope*, 2024 WL 317781, at *8 n.12 (citing *Sanchez II*, 956 F.3d at 792) ("[O]ur court has held that failure-to-train claims are episodic. That leaves the [other asserted policies] as potential bases for [the plaintiffs'] conditions claim."). For the reasons discussed below, the Court finds Plaintiffs state a conditions of confinement claim premised on de facto Reeves County policies involving failures to provide emergency medical care and monitor detainees.[3] Because the Fifth Circuit "has held that failure-to-train claims are episodic[,]" the Court analyzes those policies under an episodic theory but ultimately finds Plaintiffs fail to state a claim. *Cope*, 2024 WL 3177781, at *8 n.12 (citation omitted).

## II.    Conditions of Confinement

"Where a pre-trial detainee challenges the conditions of his confinement against a municipality,[4] 'the proper inquiry is whether those conditions amount to punishment

---

3. If the Court had found Plaintiffs failed to state a conditions of confinement claim, it would have also analyzed whether the actions of jail staff met the requirements for an episodic claim against Reeves County pursuant to these policies. (Doc. 12 at 10) (laying out facts to support subjective deliberate indifference—a requirement for episodic claims—on the part of Reeves County jail staff). But given the episodic claim was pled in the alternative, reaching that question is unnecessary.

4. The extent to which the typical *Monell* analysis applies in analyzing conditions of confinement cases against municipalities is unclear. "At times, the Fifth Circuit has assessed whether *Monell*'s preconditions are met in such cases. In other instances, there is no mention of *Monell*." *Wagner v. Harris Cnty., Tex.*,

of the detainee.'" *Hogan v. Bexar County*, No. 19-CV-00255, 2021 WL 1667130, at *6 (W.D. Tex. Apr. 27, 2021) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however." *Bell*, 441 U.S. at 537. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees. . . ." *Henson*, 795 F.3d at 467 (quoting *Bell*, 441 U.S. at 539).

Ultimately, the plaintiff must plead three elements to bring a conditions of confinement claim: (1) the existence of an identifiable condition or policy or otherwise that a jail official's act or omissions were sufficiently extended or pervasive as to constitute a de facto policy; (2) which was not reasonably related to a legitimate government objective; and (3) which caused the violation of a detainee's constitutional rights. *Bonilla*, 982 F.3d at 308–09 (quoting *Montano v. Orange County*, 842 F.3d 865, 874 (5th Cir. 2016)). The Court will address each element in turn.

### A. Official Policy and Policymaker

Plaintiff must first sufficiently plead a policy, custom, or pervasive practice that motivated the constitutional deprivation. *Bonilla*, 982 F.3d at 308 (quoting *Shepherd*,

---

No. 23-CV-2886, 2024 WL 4438668, at *4 n.2 (S.D. Tex. Oct. 7, 2024) (collecting cases), *reconsidered on other grounds*, 2025 WL 950088 (S.D. Tex. Mar. 28, 2025) (internal citations omitted).

591 F.3d at 454) (alteration in original) ("[A] detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights."). Plaintiff must also point to a municipal policymaker that promulgated the policy or otherwise knew of or acquiesced to the pervasive misconduct.[5] *Sanchez II*, 956 F.3d at 793.

First, Plaintiffs do not point to an official policy and instead plead pervasive customs or practices as the motivating force behind the constitutional deprivation. (Doc. 1). "To be unconstitutional, . . . a municipal entity's policy that derives from custom or practice must be 'so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Sanchez I*, 866 F.3d at 280 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). At this stage, "plaintiffs need not provide 'specific examples . . . to meet the '[custom] or practice' element." *Moore v. LaSalle Mgmt. Co., LLC*, 41 F.4th 493, 509 (5th Cir. 2022)[6] (quoting *Montano*, 842 F.3d at 876). But "to survive a motion to dismiss, . . . [the plaintiff] is required to plead at least something resembling a pattern of serious deficiencies." *Hogan*, 2021 WL 1667130, at *7 (emphasis omitted).

---

5. The Fifth Circuit sometimes mentions this as a requirement for conditions claims. *Duvall v. Dallas County*, 631 F.3d 203, 208 (5th Cir. 2011); *Sanchez II*, 956 F.3d at 792–93. Other times it recognizes conditions claims without mentioning it. *Shepherd*, 591 F.3d at 454–55.

6. *Moore* involved a policy or custom in a pure *Monell* claim, as opposed to a conditions of confinement claim against a municipality. *See Moore*, 41 F.4th at 509. The Fifth Circuit has stated that there is "no meaningful difference between these showings." *Duvall v. Dallas County*, 631 F.3d 203, 208 (5th Cir. 2011); *Guerra v. Childress County*, No. 24-CV-065, 2024 WL 4673928, at *6 (N.D. Tex. Nov. 4, 2024) ("If these requirements sound familiar, it is because they echo *Monell*. The Fifth Circuit has explicitly connected *Monell* claims with conditions-of-confinement claims.").

The Court finds Plaintiffs' pleading sufficient to support de facto Reeves County policies. Plaintiffs plead a multitude of policies, practices, and customs, all of which fall under the general umbrellas of failing to provide emergency medical care and monitor employees. (Doc. 1 at 26–27). At least in the conditions-of-confinement context, "claims can be based on multiple interacting policies." *Sanchez II*, 956 F.3d at 796 (citations omitted); *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (emphasis omitted) ("Some conditions of confinement may establish a[] [constitutional deprivation] 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. . . .").

Plaintiffs point to many other instances involving suffering and death of Reeves County detainees, which they claim were motivated by their alleged de facto policies. (Doc. 1 at 18–22). The actual mileage from pleading these instances varies, as "incidents must be factually similar to the one at issue—'they cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Thompson ex rel. Neveah T. v. Martinez*, 789 F. Supp. 3d 491 (W.D. Tex. 2025) (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (collecting cases)).

Most of the instances pled—like a man with advanced leukemia dying in detention—do not appear to be factually analogous. (Doc. 1 at 21). Others—like a detainee dying while experiencing heroin withdrawals that jail staff had been made aware of—have enough factual similarity to potentially support the existence of de facto policies related to failing to provide emergency medical care and monitor detainees.

11

*Id.* at 22. Standing alone, pointing to these instances may have been insufficient. But, as discussed below, Plaintiffs offer additional facts to support their alleged de facto polices. *Gomez*, 283 F. Supp. at 532 (citation omitted) ("[W]hile stating a claim against a municipality requires more than a barebones recitation of municipal liability, . . . [plaintiffs] can rely on minimal factual allegations at this stage in the litigation."); *Thomas*, 800 F. Supp. 2d at 842 (finding that, in municipal liability claims, it is "exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies . . . prior to discovery.").

Plaintiffs also point to several Texas Commission on Jail Standards ("TCJS") reports documenting issues with monitoring, face-to-face observation intervals, and staff training in Reeves County Jail. (Doc. 1 at 22–24). The Fifth Circuit considers TCJS reports as evidence supporting the existence of unofficial customs or practices. *Sanchez II*, 956 F.3d at 792 (reversing lower court's summary judgment dismissal of conditions of confinement claim because it "failed to consider" TCJS reports as evidence of de facto policy); *Carswell v. Hunt County*, No. 20-CV-02935, 2025 WL 936661, at *5 (N.D. Tex. Mar. 26, 2025) (finding the plaintiff sufficiently pled widespread practice of failure to monitor detainees because the county defendant "failed TCJS inspections. . . ."). At this stage, the Court finds these reports—in combination with the other detainee deaths—sufficient to "plead at least something resembling a pattern of serious deficiencies." *Hogan*, 2021 WL 1667130, at *7; *Hobart v. City of Stafford*, No. 09-CV-3332, 2010 WL 3894112, at *5 (S.D. Tex. Sept. 29, 2010) ("[E]ven general facts which point to prior violations . . . would allow the [plaintiffs] to survive the motion to dismiss phase.").

To establish municipal liability, Plaintiffs must also identify a connection between a final municipal policymaking authority and the alleged policies or customs. *Moore*, 41 F.4th at 510. Plaintiffs must only "plead sufficient facts to allow the court to reasonably infer" a connection between a municipal policymaker and the alleged unconstitutional policy, custom, or practice. *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (quoting *Groden v. City of Dallas*, 826 F.3d 280, 284, 286 (5th Cir. 2019)). "[T]he specific identity of the policymaker is a legal question that need not be pled. . . ." *Id.* (citation and internal quotation marks omitted).

"[W]hether a particular official has final policymaking authority is a question of state law." *Hernandez v. Dall. Cnty. Sheriff*, No. 23-CV-01583, 2024 WL 4202381, at *4 (N.D. Tex. Sept. 16, 2024) (alteration in original) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)); *Longoria*, 942 F.3d at 271. Under Texas law, "[i]t has long been recognized that . . . the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected. . . ." *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990); *Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019) (collecting cases) ("We have previously found that Texas police chiefs are final policymakers for their municipalities, and it has often not been a disputed issue in the cases.").

Here, Plaintiffs identified the Reeves County Sheriff as policymaker with the County's jail administrator and County commissioners' court as policymakers in the

13

alternative. (Doc. 1 at 29–30). Plaintiffs' claims pertain only to the circumstances of treatment while Mendoza was detained in Reeves County Jail—"over which [the sheriff] is the sole keeper and final policymaker." *Hernandez*, 2024 WL 4202381, at *4 (internal quotations omitted) (citing TEX. LOC. GOV'T CODE § 351.041; *Turner*, 915 F.2d at 136). Courts have found similar municipal liability claims in which the events giving rise to the claim occurred in jail to have adequately pled the county sheriff as policymaker. *Id.*; *Bonnet-Pritchett v. Washington County*, No. 21-CV-149, 2023 WL 8421180, at *8 (W.D. Tex. Dec. 4, 2023) (citing *Roe v. Johnson County*, No. 21-10890, 2023 WL 117826, at *3 (5th Cir. Jan. 5, 2023) (per curiam) (unpublished)) (finding "Texas law conclusively establishe[d] the policymaker's identity" as the county sheriff absent a delegation of policymaking authority because the claim involved events in jail). The Court therefore finds Plaintiffs have sufficiently pleaded pervasive customs or practices on the part of Reeves County with a connection to a Reeves County policymaker.

### B. Legitimate Government Objective and Moving Force

The Court turns to the final[7] two elements of Plaintiffs' conditions of confinement claim: (1) whether Reeves County's de facto policies were unrelated to a legitimate government objective and (2) caused the violation of Mendoza's constitutional rights. *Bonilla*, 982 F.3d 308–09 (citation omitted). First, the Court finds

---

7. Reeves County claims Plaintiffs must also plead deliberate indifference for their conditions of confinement claim. (Doc. 1 at 11). This is wrong, as pleading a de facto municipal policy or custom that motivated a constitutional deprivation creates the presumption of deliberate indifference. *Shepherd*, 591 F.3d at 454–55 (rejecting a county's argument that "a plaintiff challenging conditions of confinement must prove intent—specifically, deliberate indifference").

14

Plaintiffs have adequately pled that Reeves County's alleged customs and practices of failing to provide emergency medical services and monitor detainees were not reasonably related to a legitimate government objective. (Doc. 1). Assuming these de facto policies exist, they would lack any valid legitimate government objective; Reeves County does not appear to argue otherwise. (Doc. 10). The Court therefore finds Plaintiffs have adequately pled this element.

Next, the Court finds Plaintiffs sufficiently pled that Reeves County's alleged customs and practices motivated a deprivation of Mendoza's constitutional rights. "The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare*, 74 F.3d at 639 (citation omitted). These rights include "basic human needs, including medical care and protection from harm. . . ." *Id.* at 650; *Wilson*, 501 U.S. at 304 (finding constitutional violation can occur if multiple policies interact to "produce[] the deprivation of a single, identifiable human need. . . .").

Plaintiffs contend Reeves County's de facto policies of failing to provide emergency medical care and monitor detainees led to jail officials ignoring Mendoza's serious illness and ultimately caused his death. (Doc. 1 at 6, 12). Courts have found similar claims involving multiple pervasive customs or policies that resulted in a failure to provide medical care to satisfy this element. In *Sanchez II*, for example, the Fifth Circuit recognized a claim where the plaintiffs pointed to a "policy of disregarding outside information when assessing a detainee's medical needs." 956 F.3d at 795. Relying in part on TCJS reports, the Court found a jury could conclude this and the

15

other alleged pervasive policies had a "mutually enforcing effect" that deprived [the decedent] of needed medical care," and ultimately held the plaintiffs' claim should not have been dismissed on summary judgment. *Id.* at 796.

Plaintiffs also provide the 'minimal factual allegations' necessary to link these policies to the constitutional deprivation. *Gomez*, 283 F. Supp. 3d at 532 (quoting *Thomas*, 800 F. Supp. 2d at 842). Mendoza's sister warned jail officials multiple times that Mendoza was very sick and needed to be taken to the hospital. (Doc. 1 at 11). Mendoza also told jail officials he was having trouble breathing and asked when medical care would arrive. *Id.* at 10. Despite these warnings and jail staff observing Mendoza's body chills, minimal appetite, and profuse sweating, Plaintiffs claim Mendoza received no treatment or vitals check until it was too late because of Reeves County's de facto policies. *Id.* at 6.

Reeves County contends "Plaintiffs do not relate [the alleged pervasive customs] to [Mendoza's] treatment, lack of treatment or death." (Doc. 10 at 2). But it is obvious how these alleged customs—all of which relate to the failure to provide medical attention and observe detainees in medical distress—could motivate Mendoza being denied his constitutional right to medical care. (Doc. 1 at 26–27). Accordingly, the Court finds Plaintiffs sufficiently connected the policies asserted to the alleged constitutional deprivation and thus pleaded a conditions of confinement claim against Reeves County. The Court therefore **RECOMMENDS** Reeves County's Motion to Dismiss be **DENIED** as to Plaintiffs' conditions of confinement claim. (Doc. 10).

16

### III.    Episodic Acts or Omissions

The Court next turns to whether Plaintiffs pled an episodic acts or omissions claim premised on policies[8] involving Reeves County's failure to train jail staff. Much of Reeves County's Motion to Dismiss is spent challenging Fifth Circuit precedent. (Doc. 10 at 15–18). Reeves County claims that "[i]n a straight up municipal liability context, with no claims asserted against individual jail staff, there is no such thing as an episodic act or omission claim." *Id.* at 17. Though acknowledging the Fifth Circuit held otherwise in *Sanchez I* and *II*, Reeves County argues "these decisions directly contradict other Fifth Circuit decisions, including at least one en banc decision." *Id.* at 16. Before addressing the merits of this argument, the Court notes it is a losing one when addressed to a Court bound by Fifth Circuit law.

Even if this Court were untethered by the Fifth Circuit's recognition of an episodic act or omission claim absent individual jail staff, Reeves County is wrong that the *Sanchez* decisions are incompatible with *Monell*. Reeves County argues there is no such thing as an episodic act or omission case against a county because a county cannot be held liable for the acts of its employees and that a specific municipal policy is required. (Doc. 10 at 17) ("It is only when that employee's act or omission is done in accordance with policy that the county can be held liable."). Defendant is correct that a specific municipal policy is required to hold a municipality liable—but *Sanchez II*

---

8. Plaintiffs allege Reeves County had de facto policies of (1) not training jailers how to deal with seriously ill detainees, (2) not training jailers regarding implementation or use of any detox protocol or how to deal with detainees who were undergoing detox from alcohol and/or drugs, and (3) using jailers who had only temporary jailers licenses and lacked adequate education, experience and/or training. (Doc. 1 at 27).

applied this requirement. 956 F.3d 791 ("For both claims [including episodic-acts-or-omissions claims], a plaintiff has . . . to show . . . that a municipal policy was the moving force behind the violation.").

Despite it being possible to bring an episodic claim against a standalone municipal defendant, it is difficult to do so. "A municipality is almost never held liable for an isolated unconstitutional action on the part of an employee. . . ." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citation omitted). "To establish the County's liability, Plaintiff must do more than allege[] misconduct on the part of a few jail officials, because municipal liability predicated on respondeat superior is a claim flatly rejected by the Supreme Court." *Hogan*, 2021 WL 1667130, at *7 (citing *Monell*, 436 U.S. at 691; *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997)).

This difficulty is heightened when the episodic claim involves a failure to train, as "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). The plaintiff must plead three elements: (1) the municipality failed to train or supervise the jail officials; (2) there is a casual connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Arnone v. County of Dallas*, 29 F.4th 262, 272 n.78 (5th Cir. 2022) (citing *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)).

"Deliberate indifference is an extremely high standard to meet." *Sanchez I*, 866 F.3d at 280 (citation omitted). Disputed "actions may have amounted to negligence,

18

even gross negligence, but that is not sufficient to create a genuine issue of material fact concerning deliberate indifference . . . much less a systemic failure attributable to the County." *Id.* "A plaintiff may show deliberate indifference by demonstrating either that (a) the municipality had notice of a pattern of similar violations, or (b) the constitutional violation was a highly predictable consequence of a particular failure to train." *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (citation and internal quotations omitted). Finally, "for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations omitted) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

Here, even assuming Plaintiffs plead the other requirements, they have failed to provide sufficient facts to support the existence of de facto policies on the part of Reeves County involving the failure to train. Most of the TCJS reports[9] relating to training deficiencies pointed to by Plaintiffs involve suicide prevention training, which does not relate to their asserted polices. *Compare* (Doc. 1 at 27) (asserting policies involving the failure to provide training on how to provide proper medical attention to seriously ill detainees and those experiencing withdrawal); *with* (Doc. 1 at 25) ("The TCJS also learned, when reviewing suicide prevention training, that staff were not receiving suicide prevention training in accordance with the jail's operational plans."). Thus, the Court is left with Plaintiffs' bare assertions of de facto Reeves County policies

---

9. The only TCJS report Plaintiffs point to implicating failures to train outside the suicide prevention context involves jail staff not receiving a four-hour objective jail classification course. (Doc. 1 at 24). But Plaintiffs fail to explain how this deficiency motivated the constitutional deprivation.

19

surrounding the failure to train,[10] which alone are insufficient. *Cervantez v. Love*, No. 22-CV-150, 2024 WL 2967336, at \*14 (N.D. Tex. June 12, 2024) (citing *Henderson v. Harris County*, 51 F.4th 125, 131 (5th Cir. 2022)) ("A plaintiff cannot merely contend that there is insufficient training without any specific facts to support that claim.").

Plaintiffs also assert Reeves County has a policy of employing jailers who had only temporary jailer's licenses. (Doc. 1 at 24). Like with the other de facto training policies, "Plaintiffs' pleadings fail to show a causal link between the alleged lack of training or temporary licenses and the incident." *Robinson v. Midland County*, No. 21-CV-111, 2022 WL 20653429, at \* 10 (W.D. Tex. Apr. 2, 2022) (J. Counts), *aff'd*, 80 F.4th 702 (5th Cir. 2023). "[C]ourts in this circuit have dismissed failure to train claims based on similar allegations." *Id.* (citing *Rowland v. Sw. Corr., LLC*, No. 20-CV-00847, 2021 WL 4206409, at \*6 (E.D. Tex. Aug. 17, 2021), *R&R adopted*, 2021 WL 4191433 (E.D. Tex. Sept. 15, 2021) (holding that a "sprinkling" of "temporary licenses" was "insufficient to plead a claim for failure to train")). Accordingly, the Court finds Plaintiffs have failed to state an episodic acts or omissions claim premised on the failure to train.

### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that Reeves County's Motion to Dismiss be **DENIED** as to Plaintiffs' conditions of confinement and state-law

---

10. The Court also does not find the string of detainee deaths and suffering supportive here, as Plaintiffs fail to link them to failures to train. *Cervantez*, 2024 WL 2967336, at \*14 (finding the plaintiff failed to state a failure to train claim because "[the plaintiff] provide[d] no basis to plausibly infer that training and supervision were not provided other than her allegation as to what happened to [the plaintiff] and that other inmates died while in custody").

claims. (Doc. 10). The Court further **RECOMMENDS** Reeves County's Motion to Dismiss be **GRANTED** as to Plaintiffs' episodic acts or omission claim involving failure to train policies. *Id.*

SIGNED this 5th day of January, 2026.

_____
DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).